UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

PATRICK A. MCLEOD,

              Petitioner,

vs.                          Case No.   2:08-cv-717-FtM-36SPC

EDWIN G. BUSS,

              Respondent.[1]

_____/

**OPINION AND ORDER**

**I. Background**

Petitioner Patrick A. McLeod (hereinafter "Petitioner" or "McLeod") initiated this action by filing a *pro se* Petition for Writ of Habeas Corpus ("Petition," Doc. #1) pursuant to 28 U.S.C. § 2254 on September 12, 2008.[2]  The Petition challenges McLeod's

---

[1]Edwin G. Buss, the current Secretary of the Florida Department of Corrections, is substituted as the proper party Respondent for Walter A. McNeil, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

[2]The Petition was filed in this Court on September 18, 2008, but the Court deems a petition "filed" by an inmate when it is delivered to prison authorities for mailing. *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001).  Absent evidence to the contrary, the date of filing is assumed to be the date the inmate signed the document.  *Id*.  If applicable, the Court also gives a petitioner the benefit of the state's mailbox rule with respect to his state court filings when calculating the one-year limitations period under 28 U.S.C. § 2244(d).  Under Florida's inmate "mailbox rule," Florida courts "will presume that a legal document submitted by an inmate is timely filed if it contains a certificate of service showing that the pleading was placed in the hands of prison or jail officials for mailing on a particular date, if . . . the pleading would be timely filed if it had been received and file-stamped by the Court on that particular date."  *Thompson v. State*, 761 So. 2d 324, 326 (Fla. 2000).

conviction for robbery, after jury trial, entered in the Twentieth Judicial Circuit Court, Charlotte County, Florida (case number 02-506-CF) for which he was sentenced to a 15-year term of imprisonment as a prison release reoffender.  Petition at 1.[3]  The Petition raises three grounds for relief (restated):

**Ground 1** (Petition at 6-17)

Whether trial counsel rendered ineffective assistance of counsel for failing to object to juror Mr Bonakoske.

**Ground 2** (Petition at 19-21)

Whether Petitioner was denied a fair determination of his judgment and sentence on direct appeal due the absence of a record to refute Petitioner's claim that Mr. Bonakoske was seated as a juror, who Petitioner alleged was biased.

**Ground 3** (Petition at 24-25)

Whether appellate counsel rendered ineffective assistance at the evidentiary hearing on Petitioner's Rule 3.850 motion for failing to call Mr. Bonakoske, the alleged biased juror.

Respondent filed a Response (Doc. #8, Response) seeking dismissal of the Petition as time-barred.  Response at 1. In the alternative, Respondent moved for summary judgment based upon Petitioner's procedural defaults and his failure to satisfy §§ 2254(d) and (e).  *Id.*  Petitioner filed a reply (Doc. #15, Reply)

---

[3]The page numbers referenced within this Order, other than to the page number referenced in the Exhibits, are to the page of the identified document as it appears on the Court's case management electronic computer filing system.  Exhibits are available in paper format only.

challenging the State's contention that the Petition was untimely, and identifying a Rule 3.800 post-conviction motion, which was inadvertently overlooked by Respondent and which tolled the federal limitations period.   Reply at 2.    After being directed by the Court to file a supplemental response readdressing the timeliness issue, Respondent filed a supplemental response (Doc. #23, Supp. Resp.) on February 1, 2011, and submitted a "corrected timeliness analysis" conceding that the Petition was timely filed.   Supp. Resp. at 1, 3.   Consequently, the Court deems this matter ripe for review of the merits.

## II.   Applicable § 2254 Law

McLeod filed his Petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996).   Consequently, post-AEDPA law governs this action.   *Abdul-Kabir v. Quarterman*, 127 S. Ct. 1654, 1664 (2007);   *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Davis v. Jones*, 506 F.3d 1325, 1331, n.9 (11th Cir. 2007). Under AEDPA, the standard of review "is 'greatly circumscribed and is highly deferential to the state courts.' *Crawford v. Head*, 311 F.3d 1288, 1295 (11th Cir. 2002)." *Stewart v. Sec'y Dep't of Corr.*, 476 F.3d 1193, 1208 (11th Cir. 2007).   *See also Parker v. Sec'y Dep't of Corr.*, 331 F.3d 764 (11th Cir. 2003).   AEDPA altered the federal court's role in reviewing state prisoner applications in order to "prevent federal habeas 'retrials' and to ensure that

state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

**A.   Federal Question**

A federal court may only entertain an application for a writ of habeas corpus from a state prisoner who claims his custody violates the "Constitution or the laws or treaties of the United States." 28 U.S.C. § 2254(a).   Questions of state law are generally insufficient to warrant review or relief by a federal court under § 2254. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991); *Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir. 1983); *Cabberiza v. Moore*, 217 F.3d 1329, 1333 (11th Cir. 2000). A violation of a state rule of procedure, or of state law itself, is not a violation of the federal constitution. *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1982); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1989). "It is a fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters." *Herring v. Sec'y. Dep't of Corr.*, 397 F.3d 1338, 1355 (11th Cir. 2005)(internal quotations and citations omitted).

**Ground Three**

Petitioner claims that he was denied effective assistance of counsel when Amber Weaver, who was appointed to represent Petitioner in connection with his Rule 3.850 hearing, did not call Juror Bonakoske as a witness at the evidentiary hearing. Petition

at 24-25. Respondent contends that Ground Three does not state a cognizable basis for relief. Response at 23. The Court agrees.

The Sixth Amendment does not apply in post-conviction proceedings. *Coleman v. Thompson*, 501 U.S. 722, 755 (1991). The right to counsel extends only to the first appeal of a criminal conviction. *Ross v. Moffitt*, 417 U.S. 600 (1974); *Pennsylvania v. Finley*, 481 U.S. 551 (1987). *See also*, *Jimenez v. Sec'y Dep't of Corr.*, 481 F.3d 1337, 1344 (11th Cir. 2007)(stating "[a] petitioner cannot establish constitutionally ineffective assistance of counsel in state post-conviction proceedings because there is no constitutional right to an attorney in such proceedings"). Thus, Ground Three in the Petition fails to raise a federal issue, is barred from federal review, and is dismissed with prejudice.

**B.  Exhaustion and Procedural Default**

A federal court may only review an issue under § 2254 if petitioner first afforded the state courts an adequate opportunity to address that issue. 28 U.S.C. § 2254(b)(1)(A).

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. To provide the State with the necessary opportunity, the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.

*Baldwin v. Reese*, 541 U.S. 27, 29 (2004)(internal citations and quotations omitted.) This imposes a "total exhaustion" requirement

in which all the federal issues must have first been presented to the state courts. *Rhines v. Weber*, 544 U.S. 269, 274 (2005). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Duncan v. Henry*, 513 U.S. 364, 365 (1995)(stating "exhaustion of state remedies requires that petitioners 'fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights'").

"A claim is procedurally defaulted if it has not been exhausted in state court and would now be barred under state procedural rules." *Mize v. Hall*, 532 F.3d 1184, 1190 (11th Cir. 2008). Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, . . . . ." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A procedural default for failing to exhaust state court remedies will only be excused in two narrow circumstances. First,

a petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the asserted error. *House v. Bell*, 547 U.S. 518, 536-37 (2006); *Mize v. Hall*, 532 F.3d at 1190. Second, under exceptional circumstances, a petitioner may obtain federal habeas review of a procedurally defaulted claim, even without a showing of cause and prejudice, if such review is necessary to correct a fundamental miscarriage of justice. *House v. Bell,* 547 U.S. 518, 536 (2006); *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

### Ground Two

In Ground Two, Petitioner claims that he was "denied his right to a fair determination of his judgment and sentence during direct review" because part of the record was not transcribed.[4]  Petition

---

[4] Appointed counsel on direct appeal filed a motion to supplement the record on August 23, 2008, because the record was incomplete.  Objection to Motion for Extension/Motion to Reverse Case Due to Inability to Obtain a Complete Record on Appeal, Exh. 2.  "Missing from the record [was] trial testimony, *voir dire*, open and closing argument and a hearing on a motion for judgment of acquittal." *Id.* at 1.  It appears that due to an "impasse" between the reporting agency and an employee, the record from Petitioner's cases, as well as several other cases were not transcribed.  April 6, 2004 Order of Court, Exh. 3.  Apparently, at some point, the missing portions of Petitioners trial were recovered, except for the "transcript of the *voir dire* on the morning of December 12, 2002 and any conference between jurors, counsel and the Court prior to the commencement of opening statements at 11:00 a.m. on December 12, 2002," which were destroyed by Hurricane Charley and the tapes from the hearing were "inaudible."  State's Supplemental Response to Defendant's Motion for Post-Conviction Relief, November 30, 2005 Correspondence from Accent Reporting Service, and November 9, 2005

(continued...)

at 21.  In particular, Petitioner points out that the transcript from *voir dire* of the jury panel taken on December 12, which was the second day of trial, was lost.  *Id*.  Petitioner contends that it was during this time that Mr. Bonakoske, who was a fire chief, testified that he would give more weight to the testimony of a police officer and would have to hear McLeod testify.  *Id*. at 20.  Consequently, Petitioner argues that his "motion to reverse his case due to the inability to obtain a complete record on appeal should have been granted."  *Id*.

Respondent submits that Ground Two is procedurally barred because Petitioner did not raise the constitutional dimension of Ground Two below in the State court on direct appeal.  Response at 19.  Respondent also contends that Petitioner has not demonstrated cause and prejudice to excuse his procedural default of this claim.  *Id*. at 20.  Respondent acknowledges that Petitioner filed a State petition for writ of habeas corpus.  However, Petitioner did not assert an ineffectiveness claim under *Strickland* that appellate counsel was ineffective for failing to raise the issue of the missing portion of the trial transcript on direct appeal.  *Id*.  Instead, Petitioner only complained that portions of his transcripts were missing without identifying any meritorious grounds that were overlooked by appellate counsel.  *Id*.   Thus,

---

[4](...continued)
Due Process Cost Authorization for Transcripts, Exh. 10(b).

Petitioner has not demonstrated cause and prejudice to excuse his procedural default of this ground.

To the extent discernable, it appears that Petitioner is attempting to articulate a Fourteenth Amendment Due Process claim. The Court finds, however, that Petitioner did not raise a federal Due Process claim before the State court.  Indeed, upon review of the record, the Court finds that Petitioner did not raise any Due Process claim or any other claim on direct appeal that was premised on the missing portion of the record.  Exh. 5.[5]  As set forth *supra*, appellate counsel filed an "Objection to Motion for Extension/Motion to Reverse Case Due to Inability to Obtain a Complete Record on Appeal, Exh. 2, which was eventually denied as moot by the post-conviction court.  Exh. 4.  Petitioner did not appeal the denial of the motion to reverse case.

As acknowledged by Respondent, Petitioner filed a State petition for writ of habeas corpus alleging direct appeal counsel was ineffective because counsel did not have a complete transcript of the proceedings in order to identify all issues on appeal.  *See generally* Exh. 19.  In support of his contention that the missing transcript was damaging to his direct appeal, Petitioner did not identify what meritorious issue he was precluded from raising and

---

[5]Petitioner only raised one ground on direct appeal: the trial court erred in denying defendant's motion for judgment of acquittal by finding that the act of jumping over the counter and taking money from the store cash register placed the store clerk in a reasonable fear of serious bodily injury or death.  Exh. 5. at 7.

cited only one federal case as precedent: *Hardy v. U.S.*, 375 U.S. 277 (1964). *Id.* at 2-3. The appellate court, construing the State petition as alleging a claim of ineffective assistance of counsel, denied the petition without opinion. Exh. 20.

Petitioner's citation to *Hardy v. U.S.* did not alert the State court of the federal dimension of this claim. In *Hardy*, the Supreme Court considered the juxtaposition of a local practice by the U.S. Attorney in the District of Columbia ("D.C.") in providing federal indigents with full transcripts if the costs were not more than $200, with D.C. Circuit Rule 33(b), whereby after the court grants an appeal *in forma pauperis* the court determines "whether, and to what extent, a transcript will be necessary for the proper determination of the appeal." Significantly, in *Hardy*, the Court expressly stated that "[w]e deal here with the statutory scheme and do not reach a consideration of constitutional requirement." *Id.* at 282. Clearly, Petitioner was not a defendant in a federal prosecution in D.C. and was not denied a transcript of any of his trial proceedings due to his indigent status. Consequently, the Court finds that Petitioner's sole citation to a federal case did not alert the State court of the constitutional dimension of this ground below, and fails to show adequate cause and actual prejudice to excuse his default. Nor does Petitioner allege or demonstrate that he is entitled to the fundamental miscarriage of justice

exception.   Thus, the Court finds Ground Two is procedurally barred.

In the alterative, the Court finds Ground Two meritless. United States Supreme Court precedent requires that "the State must afford the indigent a 'record of sufficient completeness' to permit proper consideration of his claims.   A 'record of sufficient completeness' does not translate automatically into a complete verbatim transcript." *Mayer v. City of Chicago*, 404 U.S. 189, 194 (1971)(quoting *Draper v. Washington*, 372 U.S. 487, 496 (1963)). Here, Petitioner was not entirely denied a record for review. Instead, only the transcript of the jury *voir dire* from the morning of the second day was missing from the record.   *See*, Exh. 12, Vol. II, at 169, reflecting continuation of trial commencing at 11:00 a.m. on December 12, 2002.   Indeed, the entirety of the first day of venire was transcribed.   *Id.* at 74-167.   Further, five of the six jurors who were seated were selected on the first day, December 11, 2002.   *Id*.   The trial court, after administering the oath to the jury, apprised the jury that defendant was entitled to a presumption of innocence and that the State bore the burden of proof.   *Id.* 88-90.   The jury pool unanimously agreed that they would follow the law.   *Id.* at 90.   The December 11, 2001 *voir dire* transcript also reveals that defense counsel had exhausted all his peremptory strikes by the end of the first day of jury selection. *Id*. at 160.   Further, the December 11, 2001 transcript reveals that

-11-

defense counsel moved to strike one juror for cause, but trial court denied the defense motion after the trial court determined that the juror had been rehabilitated.   *Id*. at 154-155.

At the end of the first day, one potential juror who was to be empaneled on December 12, 2001 raised his hand and commented "some of the questions that were answered inside the box, I have some different answers to those."   *Id*. at 166-167.   The court responded: "I'll be asking you. . . . No, I'll be asking those questions.   And it's always when the jury is sworn that we have a jury."   *Id*. Thus, it is clear from the transcript of the proceeding day that the court took an active role in the jury selection process, initially advised the potential jurors of the law, and permitted counsel to further *voir dire* potential jurors with follow up questions.   In light of the court's assurances that the procedure would continue similarly the following day, there is no reason to believe that both the court and counsel did not conduct themselves the second day consistent with the protocol they engaged in the first day.[6]

---

[6]Florida Rule of Criminal Procedure 3.300(b) provides:

(b) Examination.   The court may then examine each prospective juror individually or may examine the prospective jurors collectively. Counsel for both the state and the defendant shall have the right to examine jurors orally on their *voir dire*.   The order in which the parties may examine each juror shall be determined by the court.   The right of the parties to conduct an examination of each juror orally shall be preserved.

Finally, to determine whether Petitioner was prejudiced by his appellate attorney's failure to raise a particular issue, the Court "must decide whether the arguments the [Petitioner] alleges his counsel failed to raise were significant enough to have affected the outcome of his appeal." *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (citing *Miller v. Dugger*, 858 F.2d 1536, 1538 (11th Cir. 1988)), *cert. denied*, 531 U.S. 1131 (2001). "If [a court] conclude[s] that the omitted claim would have had a reasonable probability of success, then counsel's performance was necessarily prejudicial because it affected the outcome of the appeal." *Eagle*, 279 F.3d at 943 (citing *Cross v. United States*, 893 F.2d 1287, 1290 (11th Cir. 1990)).  As noted above, Petitioner did not identify what meritorious issue counsel was precluded from raising as a result of the missing portion of the record.

Additionally, Petitioner's argument that he was denied due process due to the missing venire of the jury on the morning of the second day is even more tenuous because Petitioner did not assert a claim of trial court error stemming from the selection of the biased juror.  Instead, Petitioner claims only that trial counsel was ineffective for failing to object, presumably for cause since counsel had exhausted all of his preemptive strikes, and was afforded an evidentiary hearing within which to develop his claim and the facts in support.  Thus, the trial court's grant of an evidentiary hearing on Petitioner's ineffective assistance claim in

-13-

connection with the alleged biased juror provided Petitioner with sufficient due process. *Smith v. Phillips*, 455 U.S. 209, 218 (1982)(finding that postural hearing to decide allegations of jury partiality satisfies due process clause of Fourteenth Amendment).

Based upon the foregoing, the Court finds that Ground Two is procedurally barred.  In the alternative, the Court finds that Petitioner fails to demonstrate that the State court's decision was an unreasonable decision of controlling Supreme Court precedent or an unreasonable determination of the facts, and is denied as without merit.

## C. Deference to State Court Decision

Where a petitioner's claim raises a federal question, was exhausted, is not procedurally barred, and was adjudicated on the merits in the state courts, the federal court must afford a high level of deference to the state court's decision. *See, e.g.*, *Ferguson v. Calliper*, 527 F.3d 1144, 1146 (11th Cir. 2008).  Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See Brown v. Patton*, 544 U.S. 133, 141 (2005); *Price v. Vincent*, 538 U.S. 634, 638-39 (2003).  A state

court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. *Ferguson*, 527 F.3d at 1146.

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006)(citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). "[T]o be 'contrary to' clearly established federal law, the state court must either (1) apply a rule that contradicts the governing law set forth by Supreme Court case law, or (2) reach a different result from the Supreme Court when faced with materially indistinguishable facts." *Ward*, 591 F.3d at 1155 (internal quotations and citation omitted); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003). A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown*, 544 U.S. at 134; *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), *cert. denied*, 534 U.S. 956 (2001); or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 120 S. Ct. at 1520). The "unreasonable application"

inquiry "requires the state court decision to be more than incorrect or erroneous"; it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-77 (2003) (citation omitted); *Mitchell*, 540 U.S. at 17-18; *Ward*, 592 F.3d at 1155.

**D.   Ineffective Assistance of Counsel**

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d). *Newland v. Hall*, 527 F.3d 1162, 1183 (11th Cir. 2008). Post-AEDPA, the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case. *Newland*, 527 F.3d at 1184. In *Strickland*, the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, *i.e.*, "fell below an objective standard of reasonableness" "under prevailing professional norms," which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) whether the deficient performance prejudiced the defendant, *i.e.*, there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 688; *see also Bobby Van Hook*,

558 U.S. ___, 130 S. Ct. 13, 16 (2009).  Thus, a habeas court's review of a claim under the *Strickland* standard is "doubly deferential." *Cullen v. Pinholster*, ___ U.S. ___, 131 U.S. 1388, 1403 (April 4, 2011) (quoting *Knowles v. Mirzayanze*, ___ U.S. ___, 129 S. Ct. 1411, 1420 (2009)(citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

States may "impose whatever specific rules . . . to ensure that criminal defendants are well represented," but "the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices." *Bobby Van Hook*, 130 S. Ct. at 17 (internal quotations and citations omitted).  It is petitioner who bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006), *cert. denied sub nom. Jones v. Allen*, 127 S. Ct. 619 (2006).  A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny.  *Id.*  A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.  An attorney is not ineffective for failing to raise or preserve a meritless issue.  *Ladd v. Jones*, 864 F.2d 108, 109-10 (11th Cir.), *cert. denied sub nom. Ladd v. Burton*, 493 U.S. 842 (1989); *United*

*States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) ("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client"). "To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000)(quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)). An ineffectiveness claim premised upon juror selection is evaluated by the court like any other *Strickland* claim. *Harvey v. Warden, Union Correctional Inst.*, 629 F.3d 1228, 1243 (11th Cir. 2011).

### III. Findings of Fact and Conclusions of Law

This Court has carefully reviewed the record and, for the reasons set forth below, concludes no evidentiary proceedings are required in this Court. *Schriro v. Landrigan*, 550 U.S. 465, 474-475 (2007). Petitioner does not proffer any evidence that would require an evidentiary hearing, *Chandler v. McDonough*, 471 F.3d 1360 (11th Cir. 2006), and the Court finds that the pertinent facts of the case are fully developed in the record before the Court. *Schriro*, 550 U.S. at 475.

**Ground One**

Petitioner assigns error to counsel for failing to object to the seating of Juror Bonakoske, who Petitioner claims was biased. Petition at 6. Petitioner contends that Juror Bonakoske, who was

a fireman and eventually the jury foreperson, stated during *voir dire* that: (1) he could not render a fair verdict unless he heard from the defendant; and (2) he would give more weight to a police officer's testimony. *Id.*

The record reveals that Petitioner presented his ineffectiveness claim as his first ground in his Rule 3.850 motion, Exh. 9 at 4, was afforded an evidentiary hearing on this claim, and was appointed counsel to represent him at the evidentiary hearing. The post-conviction court denied Petitioner relief on this claim, and Petitioner appealed the post-conviction denial of this claim to the appellate court. Thus, the Court finds Ground One is exhausted.

Clearly, Petitioner is entitled to an impartial jury. *Turner v. Murray,* 476 U.S. 28, 36 n. 9 (1986) ("The right to an impartial jury is guaranteed by both the Sixth Amendment . . . and by principles of due process."). The "determination of impartiality . . . is particularly within the province of the trial judge." *Rideau v. Louisiana*, 373 U.S. 723, 733 (1963).

The post-conviction court, in finding Petitioner's claim without merit, stated as follows:

> 3. In ground one, the Defendant argues that trial counsel was ineffective for failing to assert, during *voir dire*, a cause challenge or to strike juror Michael Bonakoske, who "articulated an inability to render a fair and just verdict" and who later became the foreperson. According to the Defendant, Richard Kolody, Esq., the Defendant's trial counsel, "asked [Mr. Bonakoske] if he would give more weight to a police officer than someone else. And he said, yes. He said, well, I work with them every day.

-19-

He said, I'm the fire chief." (Attached evidentiary hearing transcript at p. 14). Similarly, the Defendant testified that Mr. Bonakoske "said he would need to hear [the Defendant] testify to get [the Defendant's] side of the story." (Evidentiary hearing transcript at p. l4). The Defendant stated that the above inquiries occurred on the morning of December 12, 2002, the second day of *voir dire*. (Evidentiary hearing transcript at pp.13-14). The court file does not contain a transcript of the second day of voir dire because the tape of that proceeding is inaudible and cannot be transcribed. (Attached State's supplemental response).[FN-1] According to the Defendant, he "told Mr. Kolody to get [Mr. Bonakoske] out," but that Mr. Kolody, who had utilized all six peremptory challenges on December 11, 2002, the first day of *voir dire*, made no further inquiries of Mr. Bonakoske, made no challenge to remove Mr. Bonakoske for cause, and made no request for additional peremptory challenges. (Evidentiary hearing transcript at pp. 14-16 and p. 42).

4. Mr. Kolody indicated that he addressed with the Defendant the use of each peremptory challenge, indicated that he advised the Defendant when he used his last peremptory challenge, and did not recall requesting additional peremptory challenges. (Evidentiary hearing transcript at pp. 75-76 and p. 108). Mr. Kolody did not recall Mr. Bonakoske saying that he would give more weight to the testimony of a police officer or saying that he would have to hear from the Defendant in order to be fair, and Mr. Kolody did not believe that he moved to strike Mr. Bonakoske for cause. (Evidentiary hearing transcript at pp.7 9-80 and pp. 106-108).[FN-2]. According to Mr. Kolody, had Mr. Bonakoske stated that he would give more weight to an officer's testimony and/or that he would have to hear from the Defendant to render a fair verdict, Mr. Kolody would have moved to strike Mr. Bonakoske for cause. (Evidentiary hearing transcript at pp.79-80, p. l08, and p. l13). Consequently, based on Mr. Kolody's testimony, the Court finds that the Defendant failed to meet his burden of proving that Mr. Kolody's failed to assert a cause challenge or to strike a juror, which resulted in a biased juror serving on the jury. *See Jenkins v. State*, 824 So. 2d 977 (Fla. 4th DCA 2002). Though the Defendant's postconviction counsel argued that the missing portion of the first day of *voir dire* entitles the Defendant to a new trial, counsel did not provide this Court with any supporting case law in the postconviction context and this Court is unaware of

any such case law in the postconviction context.   The
Court notes that this case is not at the direct appeal
stage, but at the postconviction stage.   For these
reasons, ground one is denied.

> [FN-1] Except for the transcript of the second
> day of *voir dire*, the court file contains
> transcripts of all portions of the trial.
> (Attached December 11-13, 2002 trial
> transcripts).

> [FN-2] The prosecutor testified that he
> believed that Mr. Kolody moved to strike Mr.
> Bonakoske for cause, though the prosecutor
> admitted that he did not have an independent
> recollection of Mr. Kolody doing so.
> (Evidentiary hearing transcript at pp. 58-59
> and p. 70).

Exh. 11 at 1-3.

In its January 19, 2007 order, the post-conviction court cited
to *Green v. State*, 857 So. 2d 304 (Fla. 2d DCE 2003) and *State v.
Freeman*, 796 So. 2d 574 (Fla. 2d DCA 2001) for the proposition that
the defendant has the burden of "proving that trial counsel's
performance was deficient and that trial counsel's errors
prejudiced the defense." *Id.* at 1, ¶2.   Thus, the post-conviction
court correctly identified and applied the *Stickland* federal
analysis as the governing standard in evaluating a claim that
counsel was ineffective.

Mr. Kolody testified that it was his usual practice to involve
his client in jury selection, and he recalled that he did that in
the instant case.   Exh. 12, Vol. VI at 921-922.   Mr. Kolody also
recalled a fireman being called on *voir dire* the second day of
trial.   *Id.* at 925.   He denied the fireman ever stating that he

would have to hear from the defendant in order to be fair, or he would give more weight to the police officer's testimony. *Id*. at 925-926. Mr. Kolody also testified that, had Mr. Bonakoske made such statements, he would have tried to rehabilitate Mr. Bonakoske during questioning; and, if he could not, he would have moved to strike Mr. Bonakoske for cause. *Id.* at 923.

Here, the post-conviction court deemed more credible defense counsel's testimony that he would have inquired further of Mr. Bonakoske and moved to have him removed if Mr. Bonakoske had made the alleged statements. In evaluating the performance prong of the *Strickland* ineffectiveness inquiry, there is a strong presumption in favor of competence. The presumption that Mr. Kolody's performance was reasonable under the circumstances is even stronger because the record reflects that he was an experienced criminal defense attorney.[7] Exh. 12, Vol. VI at 920.

Petitioner attempts to muddy the waters by arguing that the testimony of Mr. Kolody is "in direct conflict" with the prosecutor, Mr. Fritsch's testimony. Petition at 15. At the

---

[7] "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger." *Chandler v. United States*, 218 F.3d 1305, 1316 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001). At the October 11, 2006, evidentiary hearing, Mr. Kolody testified that he had practiced criminal law for 11 years and has had between 45-50 jury trials. Exh. 12, Vol. VI at 920. *See Williams v. Head*, 185 F.3d 1223, 1229 (11th Cir. 1999) (noting that "[i]t matters to our analysis" whether the attorney is an experienced criminal defense attorney), *cert. denied*, 530 U.S. 1246 (2000).

evidentiary hearing, Mr. Fritsch testified that he recalled Mr.
Kolody seeking removal of a juror for cause.  Exh. 12, Vol. VI at
904.  Consequently, Petitioner argues that the testimony at the
evidentiary hearing was inconsistent, and thus the Court should not
give deference to the trial court's factual findings.  Petition at
15-16.

Petitioner's argument is unconvincing.  "It is Petitioner's
burden to introduce evidence proving trial counsel's deficiency."
*Harvey v. Warden, Union Corr.*, 629 F.3d at 1244.  Where a record is
silent or incomplete, the Court assumes that counsel acted
reasonably.  *Id.* (citing *Williams v. Head*, 185 F.3d 1223, 1228
(11th Cir. 1999)(stating "where a record is incomplete or unclear
about [trial counsel's] actions, we will presume that he did what
he should have done, and that he exercised reasonable professional
judgment.").  Here, a review of the record indicates that Mr.
Kolody and Mr. Frisch both testified that it was Mr. Kolody's usual
practice to make further inquiries of a juror who expressed any
bias, and then seek his removal for cause if he had not been
rehabilitated.  Mr. Kolody did not recall Bonakoske making the
statements alleged by Petitioner.  Mr. Frisch did recall Mr. Kolody
seeking to strike for cause a juror who could not be rehabilitated.
In fact, Mr. Kolody did seek to strike a juror for cause during the
first day of *voir dire* who Mr. Kolody did not believe had been
rehabilitated.  Thus, the Court does not find that the testimony of

Mr. Frisch conflicts with the testimony of Mr. Kolody. Consequently, the Court finds that the state court's adjudication of this claim was not contrary to or an unreasonable application of clearly established federal law. Additionally, Petitioner has not demonstrated by clear and convincing evidence that the state court's factual findings are incorrect. Thus, the Court finds Petitioner has failed to carry his burden under 28 U.S.C. § 2254(d)(2),(e)(1).

Even if Petitioner could prove that counsel was deficient, he still would have to satisfy the prejudice prong of *Strickland*. In order to establish that he was prejudiced by Juror Bonakoske serving on the jury, Petitioner must demonstrate that Bonakoske was actually biased against him.[8]  *See Smith v. Phillips,* 455 U.S. 209, 215 (1981).  "[T]he Supreme Court has not concluded that a lawyer who leaves an arguably biased juror on a jury is *per se* ineffective." *Babb v. Crosby,* 197 F. App'x 885, 887 (11th Cir. 2006).  The overwhelming evidence of guilt in this case precludes

---

[8]In Florida, "[t]he test for determining juror competency is whether the juror can lay aside any bias or prejudice and render a verdict solely on the evidence presented and the instructions on the law given by the court." *Smith v. State,* 28 So.3d 838, 859 (Fla. 2009) (citing *Lusk v. State,* 446 So.2d 1038, 1041 (Fla. 1984)). *See also, Irvin v. Dowd,* 366 U.S. 717, 723 (1961) ("[T]o hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard.  It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.").

any finding that Petitioner suffered prejudice.  Indeed, there was a surveillance camera in the Circle K store that captured Petitioner's image, both the victim and a witness positively identified Petitioner as the perpetrator, and the license tag of the vehicle recorded at the crime was registered to Petitioner.

Further, the trial court instructed the jurors on the law to be followed in their deliberations.   Exh. 12, Vol. V at 820. There is an "almost invariable assumption of the law that jurors follow their instructions." *Richardson v. Marsh*, 481 U.S. 200, 206 (1987).  Thus, Petitioner can not demonstrate that Juror Bonakoske actually tainted the jury.  At the conclusion of the trial, each juror confirmed that the unanimous guilty verdict reflected their individual verdict. Exh. 12, Vol. V at 821-823.  Consequently, the Court denies Ground One as without merit.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition for Writ of Habeas Corpus (Doc. #1) is **DENIED** for the reasons set forth herein.

2.   The Clerk of the Court shall enter judgment accordingly; terminate any pending motions; and, close this file.

**CERTIFICATE OF APPEALABILITY AND
LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED**

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability.  A prisoner seeking to appeal a district court's final order denying his petition for writ of

habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, ___ U.S. ___, 129 S. Ct. 1481, 1485 (2009). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) or, that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Fort Myers, Florida, on this 16th day of August, 2011.

Charlene Edwards Honeywell
United States District Judge

SA: hmk

Copies: All Parties of Record